UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY LEE SARP,

                  Plaintiff,                  Case No. 16-cv-10099

v                                                        Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL SECURITY,       Magistrate Judge Stephanie Dawkins Davis

                  Defendant.

_____/

**ORDER SUSTAINING DEFENDANT'S OBJECTIONS, REJECTING THE REPORT AND RECOMMENDATION AND REFERRING THE PARTIES' CROSS MOTIONS TO MAGISTRATE JUDGE DAVIS**

On January 13, 2017, Plaintiff Jeffrey Lee Sarp filed a complaint seeking judicial review of the Social Security Commissioner's denial of disability benefits. ECF No. 1. Sarp represented himself pro se during the proceedings before the Administrative Law Judge (ALJ). After the hearing, the ALJ concluded that Sarp was not disabled. The Appeals Council denied review, making the ALJ's denial of benefits the Commissioner's final decision. The case was referred to Magistrate Judge Stephanie Dawkins Davis. After the parties filed cross-motions for summary judgment, Judge Davis issued a report recommending that Sarp's motion for summary judgment be granted, the Commissioner's motion denied, the Commissioner's finding be reversed, and the matter be remanded for further proceedings under Sentence Four. ECF Nos. 15, 17, 19. The Commissioner timely filed objections. ECF No. 20.

Pursuant to a de novo review of the record, the Commissioner's objections will be sustained and the report and recommendation will be rejected. In his motion for summary judgment, Sarp advanced seven different allegations of error in the ALJ's denial of benefits. ECF

No. 15. Because Judge Davis's report and recommendation addressed only two of those seven arguments, the matter will be referred to Judge Davis for further consideration.

**I.**

Neither party has specifically objected to Judge Davis's summary of the background and administrative proceedings of the case. For that reason, the summary is adopted in full. A brief reiteration will be provided here. Sarp was 53 years old at the alleged onset date of the disability, which is May 21, 2012. He believes he is disabled based on blindness in his right eye and his psychological bipolar disorder. He also asserts that he has a borderline personality disorder and substance abuse disorder. Sarp represented himself during the administrative proceedings. The ALJ found that Sarp had not engaged in substantial gainful activity since the alleged onset date and that his medical conditions were severe impairments. The ALJ found that Sarp had the residual functional capacity to perform medium work, with certain limitations, and concluded that Sarp could perform a significant number of jobs despite his limitations.

In his written opinion, the ALJ summarized the medical evidence in the record. The ALJ asserted that, at the benefits hearing, Sarp testified that he has been disabled since May 21, 2012, due to bipolar disorder, depression, poor vision, and back problems. ALJ Decision at 14, ECF No. 11. Sarp was assessed by Hollis Evans, a licensed social worker, with bipolar disorder and personality disorder. Mr. Evans met with Sarp several times. A Dr. Qadir also examined Sarp once, assessing him with bipolar disorder and a history of alcohol and marijuana abuse and finding that Sarp appeared "manic" and "spoke very rapidly with racing thought process." *Id.* at 15. Mr. Evans twice assessed Sarp with a Global Assessment of Functioning (GAF) Score of 49. *Id.* at 16. Dr. Qadir assessed Sarp as having a GAF score of 46. GAF scores are meant to reflect an individual's impairment in social, occupational, or school functioning. *Id.* A GAF score is not

meant to evaluate psychological limitations; rather, GAF scores reflect psychological, social and occupational functioning. *Id.* A GAF score from 41-50 reflects "serious" impairments in such functioning. A state agency consultant, Dr. Pinaire, reviewed Sarp's medical record and concluded that Sarp was "capable of performing simple one to two step tasks on a routine and regular basis." *Id.* The ALJ accorded Dr. Pinaire's conclusion significant weight.

Judge Davis's report and recommendation concluded that the ALJ "gave no weight to and, in fact, virtually ignored the opinion of Dr. Qadir." Rep. & Rec. at 17, ECF No. 19. The report further criticized the ALJ for discounting Sarp's GAF scores: "The record's consistency with regard to plaintiff's assigned GAF scores suggests the ALJ's dismissal of these scores as a matter of course was an error." *Id.* at 19–20. Finally, the report finds that "substantial evidence does not support assigning Dr. Pinaire's opinion significant weight." *Id.* at 22.

**II.**

When reviewing a case under 42 U.S.C. § 405(g), the Court must affirm the Commissioner's conclusions "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations omitted). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

Under the Social Security Act ("The Act"), a claimant is entitled to disability benefits if he can demonstrate that he is in fact disabled. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Disability is defined by the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.05. A plaintiff carries the burden of establishing that he meets this definition. 42 U.S.C. §§ 423(d)(5)(A); *see also Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 459 (6th Cir. 2012).

Corresponding federal regulations outline a five-step sequential process to determine whether an individual qualifies as disabled:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 719 (6th Cir. 2012) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)). Through Step Four, the plaintiff bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing her past relevant work. At Step Five, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

**A.**

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. See Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate

judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks and citation omitted). A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. *See VanDiver v. Martin*, 304 F.Supp.2d 934, 937 (E.D.Mich.2004). An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Id.*

**B.**

The Commissioner raises three objections to Judge Davis's report and recommendation. Specifically, the Commissioner contends that Judge Davis erred in finding that the ALJ did not adequately consider Dr. Qadir's opinion, that Judge Davis erred in finding that the ALJ did not adequately consider Sarp's GAF scores, and that Judge Davis erred in finding that the ALJ

unreasonably assigned significant weight to Dr. Pinaire's opinion. The objections will be reviewed in turn.

**1.**

The Commissioner first objects to Judge Davis's analysis of whether the ALJ considered Dr. Qadir's opinion. Judge Davis found that "the ALJ gave no weight to and, in fact, virtually ignored the opinion of Dr. Qadir, the State agency consultant who examined plaintiff." Rep. & Rec. at 17, ECF No. 19. The Commissioner objects, noting that the ALJ did summarize Dr. Qadir's report (incorrectly spelled by the ALJ as "Dr. Zadir") in his decision. *See* ALJ Decision at 14–15. Judge Davis is correct in concluding that the ALJ did not analyze Dr. Qadir's report or expressly assign weight to it in his written decision, other than to dismiss Dr. Qadir's GAF assessment. The ALJ did not actually analyze or weigh Dr. Qadir's findings that Sarp "was somewhat manic and spoke rapidly with racing thought" and that Sarp had "bipolar disorder and [a] history of alcohol and marijuana abuse." *Id.* at 14–16.

The Commissioner further argues that the ALJ was not required to specifically address Dr. Qadir's findings at all because they did not constitute medical opinions under 20 C.F.R. § 404.1527. Section 404.1527(a)(1) defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* The Commissioner argues that Dr. Qadir's report does not include a medical opinion regarding "what plaintiff can do despite his impairments." Objs. at 3, ECF No. 20. According to the Commissioner, the language of § 404.1527 defines "medical opinions" as only including statements that contain judgments about the claimant's

"symptoms, diagnosis and prognosis," what the claimant can "still do despite impairment(s)," *and* the claimant's "physical or mental restrictions." *Id.*

This argument is not supported by the text of § 404.1527(a)(1). That section defines "medical opinions" as judgments "about the nature and severity of [the claimant's] impairments." The section then goes on to provide a non-exhaustive list of examples of those kinds of judgments: conclusions regarding symptoms and prognosis, functional capacity despite impairments, and physical or mental restrictions. *Id.* The fact that the list of examples is connected by "and" does not mean that a statement is a medical opinion only if the statement includes each of the examples. Dr. Qadir described symptoms which Sarp was experiencing, diagnosed him with certain disorders, and concluded that he had a GAF of 46, which reflects a conclusions that Sarp had serious impairment in social, occupational, and school functioning. ALJ Decision at 14–16. Dr. Qadir did not opine on Sarp's capabilities despite his impairments, but a finding on that question is not a necessary element of a "medical opinion." In fact, it is the ALJ's ultimate responsibility to determine Sarp's residual functional capacity. § 404.1527(d)(2). To the extent the Commissioner argues that Dr. Qadir's statement is not a medical opinion because it does not discuss Sarp's capabilities despite his impairments, the Commissioner is effectively faulting Dr. Qadir for declining to opine on an issue which is reserved to the ALJ.

The Commissioner cites *Allen v. Comm'r of Soc. Sec.* for the proposition that a statement is not a medical opinion if it does not address the specific extent of the claimant's limitations. 561 F.3d 646 (6th Cir. 2009). In *Allen*, a doctor opined on "1) whether [the claimant's] spinal condition could reasonably cause the symptoms and limitations described by [claimant], and 2) whether these specific symptoms and limitations as described by [claimant] are credible." *Id.* at 651. In a footnote, the Sixth Circuit explained that those opinions were not "medical opinions"

because the opinions "address the general relationship between [claimant's] spinal condition and the symptoms/limitations it *may* cause, rather than addressing the specific extent of [claimant's] limitations." *Id.* at 651 n.3 (emphasis added). The doctor in *Allen* was offering an opinion on a general connection between conditions and symptoms and making a credibility determination. Here, Dr. Qadir was describing Sarp's symptoms and conditions and, via a GAF score, providing an indication of Sarp's limitations. Dr. Qadir's report provides a medical opinion.

The Commissioner alternatively argues that, even if the report did contain a medical opinion, the ALJ was not obligated to address Dr. Qadir's opinion because he was not a treating source. Dr. Qadir only met with Sarp once, which does not qualify Dr. Qadir as a treating physician (and Judge Davis did not classify Dr. Qadir as such). *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006). Judge Davis classified Dr. Qadir as a consulting physician and stated that "the Commissioner may not disregard opinions of a consulting physician which are favorable to a claimant." Rep. & Rec. at 20 (citing *Lashley v. Sec'y*, 708 F.2d 1048, 1054 (6th Cir. 1983)). But, in *Lashley*, the court held that the ALJ improperly relied on a psychological consultant's opinion because that opinion was undermined by lay testimony and the *treating* doctor's testimony. As the Sixth Circuit explained: "Perceptible weight must be given to lay testimony where, as here, it is fully supported by the reports of the treating physicians." *Id. Lashley* does not control here. Dr. Qadir is an examining physician, not a treating physician.

As the Commissioner expresses, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his factual findings as a whole show that he 'implicitly resolve[d]' such conflicts." *Loral Def. Sys.-Akron v.*

*N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (quoting *NLRB v. Beverly Enterprises-Massachusetts*, 174 F.3d 13 (1st Cir.1999)).[1] Undoubtedly, "it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion," but that omission is not a reason to remand if harmless. *Kornecky*, 167 F. App'x at 507. Thus, Judge Davis incorrectly concluded that the ALJ was "required by the regulations" to "explain the weight" given to Dr. Qadir's report. Rep. & Rec. at 20–21.

Judge Davis also faults the ALJ for failing to "consider the regulatory factors he was required to weigh." *Id.* at 20. However, as the Commissioner asserts, the ALJ is not required to conduct an "exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011). Rather, the ALJ must simply "give good reasons . . . for the weight we give your *treating* source's medical opinion." Section 404.1527(c)(2) (emphasis added). Dr. Qadir is not a treating physician and so the ALJ was not required to expressly provide reasons for discrediting his report. Nevertheless, the ALJ did clearly consider at least a portion of it, discounting Dr. Qadir's GAF assessment because it was "made after meeting with the claimant only once." ALJ Decision. At 16. The ALJ admitted that the assessment provided "a snapshot of the claimant's condition," but asserted that it did "not prove the claimant has an ongoing disability." *Id.* Thus, the ALJ did provide reasons for discounting Dr. Qadir's opinions. To the extent the ALJ expressly explained why he was not providing significant weight to a non-

---

[1] The ALJ gave significant weight to Dr. Pinaire's opinion. Dr. Pinaire reviewed Dr. Qadir's report and nevertheless concluded that Sarp was not disabled. The ALJ's decision to assign Dr. Pinaire's opinion more weight than Dr. Qadir's opinion, especially when Dr. Pinaire's opinion involved review of Dr. Qadir's report, indicates that the ALJ "implicitly resolved" the contradictions between the two reports. Sarp argues that the ALJ did not adequately consider whether Dr. Pinaire's opinion was consistent with the other evidence in the record, citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). In *Miller*, the court held that the ALJ erred in assigning significant weight to a non-examining source's opinion because the source had not reviewed a complete case record. Here, Dr. Pinaire did review Dr. Qadir's report, meaning that assigning significant weight to Dr. Pinaire's report was permissible. Sarp has not shown that Dr. Pinaire's report could be relied on only if it discussed Dr. Qadir's analysis in detail.

treating physician's opinion, the ALJ went beyond his regulatory obligations. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

In short, the ALJ summarized Dr. Qadir's report and expressly addressed parts of it (his GAF assessment). The ALJ also explained why Dr. Qadir's findings were being discounted: he only examined Sarp once. Because Dr. Qadir was not a treating physician, the ALJ was not required to make express credibility determinations or exhaustively analyze every opinion provided. Rather, the ALJ merely needed to implicitly resolve contradictions within the record. The ALJ's treatment of Dr. Qadir's report was not error necessitating remand.[2]

**2.**

The Commissioner also argues that Judge Davis improperly faulted the ALJ for not adequately considering GAF assessments in the record. Judge Davis found that Sarp had "received at least four consistent GAF scores (ranging form 46–50) from two sources: State agency consultant, Dr. Qadir and treating social worker, Mr. Evans." Rep & Rec. at 19. She explained that the "record's consistency with regard to plaintiff's assigned GAF scores suggest the ALJ's dismissal of these scores as a matter of course was an error." *Id.* at 19–20 (citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016)).

Judge Davis found that the ALJ inadequately considered Sarp's GAF scores by relying heavily on *Miller*. In *Miller*, the Sixth Circuit explained that "a GAF score is 'not essential to the RFC's accuracy,' [but] it nevertheless 'may be of considerable help to the ALJ in formulating the RFC.'" *Id.* at 836 (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). The Sixth Circuit directs courts to "take a case-by-case approach to the value of GAF scores." *Id.* ALJs are not required to discuss GAF scores in every situation. *See Lee v. Comm'r of Soc. Sec.*,

---

[2] To the extent there was error in the ALJ's treatment of Dr. Qadir's opinion, it was harmless for the reasons discussed below.

529 F. App'x 706, 716 (6th Cir. 2013) ("[T]he ALJ was not required to credit the VE's testimony regarding an individual with a GAF score of 50 or below."); *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (explaining that the Social Security Administration has "declined to endorse" GAF scores for use in Social Security disability programs and has "indicated that [GAF] scores" are not directly correlated to the severity requirements of mental disorder listings) (internal citations omitted); *Kornecky*, 167 F. App'x at 511 ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."); *Howard*, 276 F.3d at 241 ("[T]he ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

The *Miller* Court discussed the factors which should be considered in determining the value of GAF scores:

> Previously, we have refused to find that a low GAF score established that the ALJ's decision was not supported by substantial evidence where the ALJ had reason to doubt the credibility of the assigning source; the claimant had conflicting GAF scores; the GAF scores were not accompanied by a suggestion that the claimant could not perform any work; substantial evidence supported the conclusion that the claimant was not disabled; and the VE testified that an individual with the claimant's limitations could still perform a number of jobs. *See Kornecky*, 167 Fed.Appx. 496, 511 (6th Cir. 2006). On the other hand, we have looked to consistency among low GAF scores to determine that an ALJ minimized the severity of a claimant's symptoms and failed to provide good reasons for assigning limited weight to a treating doctor's opinion. *See Keeton*, 583 Fed. App'x. at 529–30, 530 n. 6. We have also looked to the inconsistency between one doctor's assigned GAF score and a different doctor's opinion as a proper basis for rejecting the latter doctor's opinion. See *Gribbins v. Comm'r of Soc. Sec. Admin.*, 37 Fed. Appx. 777, 779 (6th Cir.2002).

*Miller*, 811 F.3d at 836,

Here, Dr. Qadir examined Sarp once and assessed his GAF as 46. Mr. Evans, a Licensed Master Social Worker, met with Sarp several times over a year and twice assessed his GAF as

49.[3] Plaintiff also indicates that he was assessed by Dr. David Jacobi as having a GAF in the 40–45 range three times in approximately 2007. Those GAF assessments might provide some minimal support for Sarp's argument that his GAF scores have all been consistent, but because Dr. Jacobi's assessments came five years before the date of onset for Sarp's alleged disability, they are of minimal relevance.

The mere fact that there is consistency across several GAF scores is not evidence that the ALJ erred in discounting them. In *Miller*, the Sixth Circuit found that the ALJ improperly assigned limited weight to several consistent GAF scores for several reasons. First, the Appeals Council had already remanded once because the ALJ had not adequately considered GAF scores. Second, the ALJ's reasons for discounting the GAF assessments were inconsistent with the record. Third, two of the GAF scores in *Miller* were assessed by physicians. In *Keeton*, the ALJ improperly characterized the record and almost entirely ignored the opinions and GAF assessments of two physicians.

Here, the ALJ referred to the GAF assessments made by both Dr. Qadir and Mr. Evans. He indicated they provided some support for Sarp's alleged limitations. He reasonably discounted the GAF assessments because the scores are not dispositive of Social Security disability questions and because Dr. Qadir examined Sarp only once. The ALJ did err in identifying Mr. Evans as a doctor and by asserting that Mr. Evans examined Sarp only once. The record indicates that Mr. Evans assessed Sarp's GAF twice. Importantly, Mr. Evans is a licensed master social worker. As such, Mr. Evans is a medical source, but not an "acceptable medical source." Titles II & Xvi:II & Xvi: Considering Opinions & Other Evidence from Sources Who

---

[3] Both Judge Davis and Sarp indicate that Mr. Evans may have assessed Sarp's GAF a third time, but neither provides a specific citation to the record. Upon an independent review of the record, the Court is unable to locate any reference to a third GAF assessment. Ultimately, whether Mr. Evans assessed Sarp's GAF two or three times is not determinative.

Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmen, SSR 06-03P (S.S.A. Aug. 9, 2006). Accordingly, the ALJ was not required to give Mr. Evans' GAF assessments deferential weight. *See Miller*, 811 F.3d at 838 n.9 ("According to Social Security Ruling 06–03p, even a licensed clinical social worker is 'not an 'acceptable medical source,'' and this designation may 'justify' giving an opinion of an acceptable medical source greater weight. Thus, SSR 06–03p does not support Miller's conclusion that Karen Jordan is an acceptable medical source whose opinion is owed deferential weight.") (internal citations omitted)).

The ALJ discounted Sarp's claims of mental impairment because he has refused to take medication for his mental health impairments and has a long history of mental health treatment, but was able to work in the past despite his impairments. In fact, the GAF scores Dr. Jacobi assessed preceded Sarp's alleged onset date, indicating that Sarp's mental impairments were similar during the time he was working. The ALJ properly gave Mr. Evan's analysis little weight because Mr. Evans is not an acceptable medical source. As explained in *Miller*, an ALJ is justified in giving an acceptable medical source greater weight than a licensed social worker's opinion. For that reason, the ALJ's preference for Dr. Pinaire's opinion over Mr. Evan's assessment was not error. Dr. Qadir is an acceptable medical source, but the ALJ's decision to accord his one-time assessment limited weight was also reasonable.

Neither Judge Davis nor Sarp has identified any aspect of the record or medical opinions which the ALJ mischaracterized. Rather, Judge Davis appears to focus solely on the consistency of the GAF scores in finding that the ALJ erred. That analysis is inconsistent with the Sixth Circuit precedent which holds that the relevance of GAF scores are determined on a case by case basis. Here, only one GAF score assessed during the period of disability was analyzed by a

physician. The other two GAF scores were calculated by a non-acceptable medical source. More importantly, the ALJ did not ignore the GAF scores. Rather, he acknowledged they provided "snapshots" of his condition and addressed them in assessing the residual functional capacity "to the extent . . . they [were] consistent with the evidence as a whole." ALJ Decision at 16–17. The ALJ pointed to other evidence in the record which undermined the significance of the consistent GAF scores. The ALJ concluded, based in large part on Dr. Pinaire's opinion, that Sarp's mental impairments were not as severe as Sarp testified and as the GAF scores suggested. *See Kornecky*, 167 Fed App'x at 511 ("If other substantial evidence (such as the extent of the claimant's daily activities) supports the conclusion that she is not disabled, the court may not disturb the denial of benefits to a claimant whose GAF score is as low as Kornecky's or even lower."). *See also Bruner v. Comm'r of Soc. Sec.*, No. 15-CV-10521, 2016 WL 1056086, at *4 (E.D. Mich. Mar. 17, 2016) (finding that there was "substantial evidence in the record to support ALJ Blum's determination that plaintiff's GAF scores were simply 'snapshots in time'"). Given the fact that Sarp has identified no legal authority which requires an ALJ to ascribe weight to a GAF score, the lesser relevance of Mr. Evans's assessments, and the ALJ's indication of contradictory evidence in the record, the ALJ's treatment of the GAF scores was not error.

### 3.

Finally, the Commissioner objects that Judge Davis erred in finding that the ALJ unreasonably assigned significant weight to Dr. Pinaire's opinion. Judge Davis noted that the ALJ had assigned significant weight to Dr. Pinaire, who did not examine Sarp, and discounted Dr. Qadir's opinion, who did examine Sarp. Pursuant to § 404.1527(c)(1), the ALJ is generally directed to "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined you." However,

as Judge Davis recognizes, "state agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller*, 811 F.3d at 834 (quoting SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Because of that, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. One such circumstance is when the non-examining source's opinion is "'based on review of a complete case record.'" *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3). When the non-examining source's opinion is based on review of an incomplete record, there must be an indication that the ALJ considered that fact before giving greater weight to the non-examining source's opinion. *Id.* (quoting *Fisk v. Astrue*, 253 Fed. App'x. 580, 585 (6th Cir. 2007)).

For several reasons, Judge Davis erred in finding that the ALJ improperly assigned significant weight to Dr. Pinaire's opinion. First, Dr. Pinaire's opinion summarizes Dr. Qadir's findings. *See* Rec. at 64. ECF No. 11. Although Dr. Pinaire does not provide a narrative giving specific reasons for why he disagrees with Dr. Qadir, it is clear that Dr. Pinaire *reviewed* Dr. Qadir's report.[4] To the extent Dr. Pinaire's engagement with Dr. Qadir's report was insufficient, the ALJ also summarized Dr. Qadir's report and explained why his findings were given little weight. Further, as explained in sustaining the Commissioner's first objection, express discussion

---

[4] Sarp further asserts that Dr. Pinaire did not review the entire record because Dr. Pinaire concluded that there was no medical evidence of inpatient hospitalizations due to a psych condition. Sarp asserts that the record documents "two periods of *outpatient* psychiatric treatment." Pl. Resp. at 6–7, ECF No. 21. By definition, evidence of outpatient treatment is not evidence of inpatient hospitalization. More importantly, Sarp has not shown that Dr. Pinaire was required to directly address every piece of medical evidence in the record. To the contrary, the fact that the entire record was available and referenced by Dr. Pinaire is sufficient. A ruling to the contrary would impose an unnecessarily strenuous burden on non-examining physicians.

of Dr. Qadir's report was unnecessary because he was not a treating physician. In some circumstances, an ALJ is justified in giving a non-examining physician's opinion weight over a *treating* physician's opinion. Because Dr. Qadir is an examining physician, the level of justification required for preferring Dr. Pinaire's opinion is lower. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) ("[I]t is not a per se error of law, as Norris suggests, for the ALJ to credit a nonexamining source over a nontreating source. Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record."). Importantly, the ALJ "was under no special obligation" to provide details regarding "why nonexamining opinions [are] more consistent with the overall record." *Id.* at 440. Accordingly, the ALJ's explanation for the weight it assigned to Dr. Pinaire's opinion was sufficient.

Judge Davis asserts that the "record was arguably incomplete," thus undermining the ALJ's justification for giving significant weight to Dr. Pinaire's opinion. Rep. & Rec. at 22. But no specific examples of gaps in the record (apart from concerns over the treatment of Dr. Qadir's opinion, already addressed) are identified nor is any clear suggestion made that the record *was* incomplete. Because the report and recommendation will be rejected, the question of the record's completeness will be left for review by Judge Davis.

Additionally, Judge Davis found that the ALJ improperly justified his reliance on Dr. Pinaire's opinion by referencing Sarp's history of refusing treatment. The ALJ reasoned as follows on this issue:

> The claimant testified at the hearing that he takes no medications for his mental health impairments. He also reported in June 2013 that he takes no medications. (Ex. 9E). Treatment records reflect that he was refused to take medication. The claimant has also had a long history of mental health treatment and was able to work in the past despite his impairments. These facts negate his allegations of disabling mental limitations.

ALJ Opinion at 15–16.

As Judge Davis correctly notes, penalizing an individual suffering from mental impairments like bipolar disorder for failing to seek treatment or take medication is "a questionable practice." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). *See Kellett v. Colvin*, No. 13-CV-12884, 2015 WL 181650, at *15 (E.D. Mich. Jan. 14, 2015) ("[P]laintiffs suffering from mental impairments, particularly bipolar disorder, should not be penalized for failure to seek psychiatric treatment."), *adopted by* 2015 WL 181650 (E.D. Mich. Jan 14, 2015); *McDonough v. Comm'r of Soc. Sec.*, No. 15-CV-11916, 2016 WL 8115404, at *6 (E.D. Mich. Aug. 18, 2016), *adopted by*, No. 15-11916, 2016 WL 5402936 (E.D. Mich. Sept. 26, 2016) (same). *See also Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (explaining that bipolar disorder "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.").

The Commissioner argues that the ALJ was simply referencing Sarp's past refusal to take medication to support his finding that Sarp's allegations of mental limitations were not fully credible. In the paragraph immediately prior to his discussion of Sarp's past refusal to take medication, the ALJ is unquestionably weighing Sarp's credibility. The paragraph at issue here does not clearly state that Sarp's actions reduce his credibility (the ALJ simply states that Sarp's refusals to take medicine "negate his allegations of disabling mental limitations"). But in the concluding paragraph, the ALJ states that "the above evidence shows that the claimant's allegations regarding the extent of such symptoms and his limitations are not fully credible."

Courts should not disturb credibility determinations by an ALJ "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Courts "'are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the

opportunity, which we do not, of observing a witness's demeanor while testifying.'" *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (internal citations omitted). Further, even if the ALJ makes errors in conducting the credibility determination, reversal and remand is not necessary if the error is harmless. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

The ALJ relied on a number of factors in finding that Sarp was not credible. First, the ALJ pointed to several inconsistencies between Sarp's testimony and the medical evidence. Sarp asserted that his right eye blindness is disabling, but reads, watches television, and drives. Sarp alleged neck and back pain, but no independent medical examination has corroborated those complaints. The ALJ also questioned whether Sarp was financially unable to afford a psychiatrist, given Plaintiff's continued expenditure of funds for cigarettes. ALJ Decision at 15 (citing *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)). Thus, Sarp's refusal to take medication was only one aspect of the ALJ's credibility determination. Given the other evidence relied upon, the ALJ's error in penalizing Sarp for refusing to take medication for his bipolar disorder was harmless.

## C.

Because the Commissioner's objections will be sustained, the report and recommendation will be rejected. In the report and recommendation, Judge Davis addressed two of Sarp's seven claims of error. The cross-motions for summary judgment will thus be referred to Judge Davis for consideration of Sarp's remaining arguments.

## III.

Accordingly, it is **ORDERED** that the Commissioner's Objections, ECF No. 20, are **SUSTAINED.**

It is further **ORDERED** that the Report and Recommendation, ECF No. 19, is **REJECTED.**

It is further **ORDERED** that the Parties' cross-motions for summary judgment, ECF Nos. 15 and 17, are **REFERRED** to Magistrate Judge Davis for further consideration consistent with this order.

Dated: April 14, 2017     s/Thomas L. Ludington
                          THOMAS L. LUDINGTON
                          United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 14, 2017.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager