UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY L. SARP                                    Case No. 16-10099

        Plaintiff,                              Thomas L. Ludington
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Stephanie Dawkins Davis
                                                   United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 17)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On January 13, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). This case was referred to the undersigned magistrate judge for all pretrial purposes by District Judge Thomas L. Ludington. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 15, 17). The undersigned issued a report and recommendation on February 23, 2017, recommending remand. (Dkt. 19). The Commissioner filed an objection (Dkt. 20), plaintiff filed a response to the Commissioner's objection (Dkt. 21) and Judge Ludington issued an order sustaining the Commissioner's objections, rejecting the report and

recommendation and again referring the cross motions for summary judgment to the undersigned for consideration of plaintiff's previously unaddressed claims of error.[1]  (Dkt. 22).

B.    Administrative Proceedings

Plaintiff filed the instant claims for a period of disability and disability insurance benefits on November 19, 2012, alleging disability beginning May 21, 2012.  (Dkt. 11-2, Pg ID 48).  Plaintiff's claim was initially disapproved by the Commissioner on March 8, 2013.  (*Id.*)  Plaintiff requested a hearing, and on May 5, 2014 plaintiff appeared and testified, without the assistance of an attorney or other representative, before Administrative Law Judge (ALJ) Dennis M. Matulewicz, who considered the case *de novo*.  (Dkt. 11-2, Pg ID 61-94).  In a decision dated June  6, 2014, the ALJ found that plaintiff was not disabled.  (Dkt. 11-2, Pg ID 48-60).  Plaintiff requested a review of this decision on July 24, 2014. (Dkt. 11-2, Pg ID 96-97).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 24, 2015.  (Dkt. 11-2, Pg ID 40-44); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1]  Because the matter was recommended for remand for further proceedings based on just two of the claims of error asserted by plaintiff, in the interests of judicial economy, the undersigned did not consider plaintiff's remaining assignments of error in the earlier report and recommendation.  Those unaddressed claims of error will be addressed herein.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and this matter be **REMANDED** for further proceedings under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1959 and was 53 years old at the alleged onset date of disability.  (Dkt. 11-2, Pg ID 56).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 11-2, Pg ID 50).  At step two, the ALJ found that plaintiff's right eye blindness, bipolar disorder, borderline personality disorder, and substance abuse disorder were severe impairments.  (*Id*.)  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 11-2, Pg ID 50-52).  The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: never climb ladders, ropes, or scaffolds; never work with exposure to hazards including dangerous

unprotected machinery or unprotected heights; limited near/far acuity, depth perception, and field of vision; limited to simple, unskilled work with an SVP rating of 1 or 2; limited to work that would have only minimal interpersonal interaction or contact with coworkers; occasional contact and directions from supervisors; no working in close physical proximity of coworkers or teamwork; limited to routine work that would not require change or adaptations in work settings or duties more than once a month; limited to work requiring only occasional contact with the general public; and jobs without production quotas mandating a specific number of pieces per hour with a down line coworker depending on production.

(Dkt. 11-2, Pg ID 52). At step four, the ALJ concluded that plaintiff could not perform his past relevant work as a material handler, hi-lo driver and machine operator helper. (Dkt. 11-2, Pg ID 56). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 11-2, Pg ID 56-57).

B.    Plaintiff's Unaddressed Claims of Error

According to plaintiff, remand is warranted because plaintiff, who only has an eleventh grade education, represented himself at his hearing and failed to introduce several prior psychiatric evaluations, including significant records from Henry Ford Hospital from 2002, and a report from a 2012 court-ordered psychiatric evaluation by a Dr. O'Dwyer. Plaintiff further argues that, as a result of these omissions, the ALJ erred by failing to develop a complete record. (Dkt.

15, Pg ID 375-378).

Plaintiff specifically contends that the ALJ had a heightened responsibility to develop an accurate record given that plaintiff was not represented by counsel, especially in a case like this one involving mental impairments. He also asserts that the ALJ erred in failing to advise plaintiff of the importance of evidence from his treating physicians. Plaintiff argues that the prejudice and unfairness resulting from the lack of counsel at the hearing alone is grounds for remand. Additionally, plaintiff argues that the ALJ's failure to sufficiently develop the record resulted in the absence of longitudinal evidence necessary to properly consider the limiting effects of plaintiff's disorder. (Dkt. 15, Pg ID 378). Specifically, plaintiff asserts that these records bear directly on plaintiff's limitations with concentration, pace and persistence. (*Id*.).

Plaintiff also argues that the ALJ improperly discounted plaintiff's credibility by concluding that if his bipolar disorder were truly disabling, plaintiff would forgo buying cigarettes in order to pay for treatment. Plaintiff argues that the Sixth Circuit has rejected this reasoning, rebutting a presumption that without the cost of a smoking habit, a claimant could afford medical treatment. (Dkt. 15, Pg ID 383). Plaintiff also argues that the ALJ erred in discounting his credibility because his complaints of back pain and limitations were not consistent with objective medical records. (Dkt. 15, Pg ID 382-83).

Plaintiff's final claim of err is that the ALJ based his RFC determination on plaintiff's activities of daily living rather than work-related activities. Plaintiff argues that it is well recognized that the ability to do certain sporadic tasks does not equate to capability for full-time employment. (Dkt. 15, Pg ID 385).

C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that the plaintiff fails to show any deficiency in the development of the record that would warrant remand. The Commissioner notes that plaintiff was duly notified and reminded of his right to be represented by counsel. In determining whether remand is necessary for further development of the record, courts are to be guided by whether there are evidentiary gaps which result in clear prejudice or unfairness. The Commissioner argues that plaintiff has not demonstrated how the missing records would have affected the ALJ's decision, and has thus made no showing of clear prejudice or unfairness. (Dkt. 17, Pg ID 446-448). Moreover, the Commissioner argues that the records from earlier "disability periods" missing from the record are from a period well before plaintiff's alleged on-set date, and were not from earlier SSA determined disability, but periods in which private insurance companies and medical providers deemed him disabled. The Commissioner notes that even medical source statements from the relevant time period on the ultimate issue of disability are not entitled to consideration as the issue of disability is one for the Commissioner to

decide.  (Dkt. 17, Pg ID 448).

The Commissioner next argues that remand for evidence not submitted to the ALJ is properly considered under Sentence Six of 42 U.S.C. §405(g), rather than Sentence Four.  Under Sentence Six, a plaintiff seeking to admit new evidence must establish it is material and that there was good cause for failure to introduce evidence earlier.  According to the Commissioner, plaintiff fails to meet the Sentence Six materiality requirement for the evidence he now wishes to have considered.  (Dkt. 17, Pg ID 451-452).

The Commissioner next argues that plaintiff has not demonstrated that any back or neck impairment has caused a functional limitation not addressed in his RFC.  The Commissioner notes that plaintiff relies on records from 1997 diagnosing the impairment but offers no records of treatment after the alleged onset date.  Furthermore, a 2013 independent medical examination found no clinical signs to support plaintiff's complaints, and plaintiff testified he can lift 50 pounds and walk for miles.  (Dkt. 17, Pg ID 462).

Finally, the Commissioner argues that plaintiff failed to raise a compelling reason to disturb the ALJ's credibility determination.  The Commissioner argues that the ALJ's finding that plaintiff was less than fully credible relied on: (1) the state agency consultant's opinion; (2) the fact that plaintiff complained of back and neck pain yet received no treatment for those conditions, and a physical

examination yielded no clinical findings to support such complaints; (3) plaintiff's failure to seek treatment from a psychiatrist due to lack of funds, despite the cost of his cigarette habit; (4) the fact that plaintiff was not taking medication for his bipolar disorder and had refused to take medication; and (5) the fact that he had a long history of mental health treatment but was able to work in the past. (Dkt. 17, Pg ID 463). The Commissioner argues the ALJ was justified in relying on these factors in making his credibility determination, or to the extent he was not entirely justified in relying on them, it was harmless error to do so. (Dkt. 17, Pg ID 466).

C.    Plaintiff's Reply Brief

Plaintiff responds to the Commissioner's arguments by noting that ALJs may only give deference to the opinion of a non-examining consultant over an examining consultant if the non-examiner has reviewed the claimant's entire file. Yet, here none of the consultants, nor the ALJ, reviewed the extensive Henry Ford Hospital records from 1997 to 2007 that the plaintiff now wishes to introduce. (Dkt. 18, Pg ID 471). As to the Commissioner's arguments that these records are too remote to be material, plaintiff advances that they are essential to establish the longitudinal evidence of the severity of his impairment. (Dkt. 18, Pg ID 473).

Plaintiff also argues that the evidentiary gap occasioned by the omission of Dr. O'Dwyer's 2012 report is prejudicial in that it reflects yet another consultative examination with findings to support disability, namely that plaintiff exhibited

8

episodes of explosive anger for which he had been hospitalized in the past, yet not considered by the ALJ. (Dkt. 18, Pg ID 474).

Plaintiff reiterates his contention that the ALJ failed in his duty to employ heightened scrutiny because plaintiff was unrepresented. He argues that the ALJ committed reversible error by not addressing medical opinions from a treating source (the Henry Ford Hospital records) and that this error was compounded by the ALJ's finding that plaintiff's back pain was not a medically determinable impairment, despite records of an MRI demonstrating herniated lumbar discs with radiculopathy. (Dkt. 18, Pg ID 472).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status. F. Bloch, Federal Disability Law and Practice §

1.1 (1984). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    ALJ's Duty to Develop Record

Plaintiff argues that remand is warranted because plaintiff, who only has an eleventh grade education, represented himself at his hearing and failed to introduce several prior psychiatric evaluations, including significant records from Henry Ford Hospital from 1997 through 2007,[2] and a report from a 2012 court-ordered psychiatric evaluation by a Dr. O'Dwyer.  According to plaintiff, the ALJ erred by failing to develop a complete record due to these omissions.

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000).  The ALJ is obligated "to fully develop the record," *Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 397 (6th Cir. 2010), and bears "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing," *Lashley v. Sec'y of*

_____

[2] Many of the plaintiff's Henry Ford Health System records from 1997 to 2007 were entered as record evidence.  (Dkt. 11-7, Pg ID 258-334).   The following discussion relates only to those records omitted from record evidence.  To the extent that plaintiff urges remand because the ALJ ignored records before him, the argument is without merit.  While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts. *Kornecky v. Commr. of Soc. Sec.*, 167 Fed. Appx. 496, 507–08 (6th Cir. 2006).

*Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)); *see Longnecker v. Commr. of Soc. Sec.*, 2016 WL 3912859, at *6 (E.D. Mich. May 25, 2016), report and recommendation adopted, 2016 WL 3903192 (E.D. Mich. July 19, 2016)(O'Meara, J.).  An ALJ is required to "develop [a claimant's] complete medical history" and to "make every reasonable effort to help [the claimant] get medical reports from [the claimant's] medical sources."  20 C.F.R. § 404.1512(d); *see Sutton v. Commr. of Soc. Sec.*, 2013 WL 1122877, at *2 (E.D. Mich. Mar. 18, 2013)(Cleland, J.).

That obligation is heightened when a claimant is unrepresented.  "When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed." *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) (citing *Lashley*, 708 F.2d at 1051); *see also Osburn v. Apfel*, 182 F.3d 918, at *7 (6th Cir. July 9, 1999) ("[T]he *administrative* law judge is under a special duty to develop the record when the claimant appears without counsel."). In order to fulfill this duty, an ALJ "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and "be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052.  This is especially true in situations where the unrepresented claimant, like plaintiff here, suffers from a mental impairment.

*Longnecker*, 2016 WL 3912859, at *6 (citing *Morlando v. Astrue*, 2011 WL 4396785, at *4 (D. Conn. Sept. 20, 2011) ("In addition to the special solicitude required for pro se claimants, the Second Circuit has also emphasized the extra care necessary when adjudicating the claims of a litigant whose mental capacity is in question.").

Courts determine whether this duty is satisfied on a case-by-case basis. *Osburn*, 182 F.3d 918, at *7. "Failure by an ALJ to fully develop the factual record in a particular matter is often evidenced by superficial or perfunctory questioning, as well as a failure to obtain all available medical records and documentation." *Vaca v. Comm'r of Soc. Sec.*, 2010 WL 821656, at * 6 (W.D. Mich. Mar. 4, 2010). Indeed, courts have explicitly stated: "An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Figard v. Comm'r of Soc. Sec.*, 2010 WL 3891211, at *7 (W.D. Mich. July 1, 2010) (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996)); *see also Longnecker*, 2016 WL 3912859, at *7.

In the case at bar, plaintiff appeared *pro se* at the hearing before the ALJ. In addition to being unrepresented, plaintiff's primary claim of disability stems from his severe mental impairment, bipolar disorder with both manic and depressive features. (Dkt. 11- 2, Pg ID 50; Dkt. 11-7, Pg ID 211). Accordingly, the ALJ

owed plaintiff a special duty to develop a full and fair administrative record. *See Longnecker*, 2016 WL 3912859, at *6.

The undersigned finds that the ALJ here fell short of his obligation to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and obtain all available medical records and documentation. *See Lashley*, 708 F.2d at 1052; *see Figard*, 2010 WL 3891211, at *7. First, at the hearing, plaintiff specifically referenced being examined by a psychiatrist (Dr. O'Dwyer, per a court order in a criminal case). The only question this revelation prompted from the ALJ was whether plaintiff had been prescribed any medication as a result of this evaluation. (Dkt. 11-2, Pg ID 79). The ALJ did not ask any questions about what court had ordered a psychiatric evaluation on plaintiff in 2012, or why. Nor did the ALJ inquire as to whether the report from this evaluation had been included with the medical records plaintiff had submitted as evidence. Clearly a psychiatric evaluation completed very near to the claimed on-set date would be significant, if not critical, to the ALJ's determination of the plaintiff's condition and the limitations it imposed upon plaintiff's ability to function. Moreover, plaintiff's reference to this examination was sufficient to trigger the ALJ's duty to obtain Dr. O'Dwyer's report and any attendant medical records from that examination. *See Figard*, 2010 WL 3891211, at *7.

Additionally, the ALJ's cursory questioning of plaintiff regarding the

completeness of his medical records (Dkt. 11-2, Pg ID 66-67) was sufficient to place the ALJ on notice that the medical records submitted as evidence were likely incomplete. Plaintiff volunteered that he had noticed his file was initially missing some records. The ALJ asked in response: "did you go get those? I mean it's your responsibility." Plaintiff testified that he "went back **home** and dug through **my files**, and [found] what I could." (Dkt. 11-2, Pg ID 67) (emphasis added). This exchange was enough to have alerted the ALJ that plaintiff had not requested medical records from his doctors, thus triggering the enhanced responsibility to do so on behalf of the *pro se*, mentally impaired claimant. At the very least, plaintiff's testimony about his search for his medical records should have prompted the ALJ to probe further regarding the completeness of plaintiff's medical records in evidence.

The ALJ's questioning of plaintiff itself, best described as perfunctory, is further evidence of the ALJ's failure to fully develop the record. The simplistic questions the ALJ asked (and his "failure to ask any meaningful follow-up questions in response to plaintiff's testimony") were not designed to explore the complexities of plaintiff's impairments. *See Vaca,* 2010 WL 821656, at *7. For instance, the ALJ asked plaintiff if he did laundry, but when plaintiff testified that he had not done laundry in a year, the ALJ asked no follow-up questions regarding how or why plaintiff had not done laundry in a year, and whether plaintiff had the

wherewithal to make other arrangements or was wearing clothing and using linen which had not been laundered in over a year. (Dkt. 11-2, Pg ID 71).

Similarly, the ALJ asked no follow-up questions to plaintiff's testimony that he had been on probation for stealing the electric meters from his house, or to his admission that he had been charged for something akin to stalking after he "went after my girlfriend's son for nonsense." (Dkt. 11-2, Pg ID 73). The ALJ did not ask him about the nature of the charges, or what the "nonsense" was, or what he meant by "go after."

The superficial and perfunctory questioning by the ALJ is further evident from the fact that the ALJ's examination of plaintiff lasted only a few short minutes. Similar to the administrative hearing in *Vaca, supra*, the entire administrative hearing in this case lasted only 29 minutes. (Dkt. 11-2, Pg ID 61-94). *See Vaca,* 2010 WL 821656, at *7. Thus, the ALJ used slightly more than half of that time (based on the transcribed page length of the plaintiff's examination) of perfunctory questioning of plaintiff. The ALJ also failed to inform plaintiff that he had the right to keep the administrative record open for a period of time following the hearing should he wish to submit additional evidence. *See* 20 C.F.R. § 404.944. In sum, the undersigned concludes that the ALJ did not successfully discharge his duty to "fully and fairly [develop] the record through a conscientious probing of all relevant facts," thus depriving plaintiff of a fair

hearing.  *See Vaca*, 2010 WL 821656, at *7.   The undersigned recognizes the

ALJ's responsibility to dispose of claims promptly and avoid unnecessary delays,

and does not in its finding here, mean to suggest that the ALJ intended to produce

an unfair result.  Nevertheless, the ALJ did not meet the heightened responsibility

triggered by plaintiff's pro se and severe mental impairment status in this case.

Accordingly, the undersigned recommends that the Commissioner's decision be

reversed and this matter remanded for further factual findings and evaluation

pursuant to sentence four of 42 U.S.C. §405(g).[3]

> 2.    RFC Supported by Substantial Evidence

Plaintiff argues that the RFC developed by the ALJ is not supported by

substantial evidence because it fails to address sufficiently plaintiff's limitation

regarding concentration, pace and persistence (CPP), and because it considers

plaintiff's activities of daily living rather than work-related activities.

With regard to plaintiff's CPP limitations, the RFC contained the following

limitation:

> simple, unskilled work with an SVP rating of 1 or 2;

---

[3] Although the Commissioner argues that the omitted evidence should be considered under the standards of a sentence six remand, the cases it cites as authority did not involve the ALJ's failure to fully and fairly develop the record.  To the contrary, the cases pertaining to this issue reviewed by the undersigned all applied the sentence four criteria.  *See e.g.*, *Longnecker,* 2016 WL 3912859, at *10 (when an ALJ fails to develop the record, he does not have sufficient facts to make a decision, and thus his decision cannot be supported by substantial evidence); *Burrows v. Comm'r of Soc. Sec.*, 2012 WL 5411113, at *1 (E.D. Mich. Sept. 28, 2012); *Vaca*, 2010 WL 821656, at *1.

> limited to work that would have only minimal
> interpersonal interaction or contact with coworkers;
> occasional contact and directions from supervisors; no
> working in close physical proximity of coworkers or
> teamwork; limited to routine work that would not require
> change or adaptations in work settings or duties more
> than once a month; limited to work requiring only
> occasional contact with the general public; and jobs
> without production quotas mandating a specific number
> of pieces per hour with a down line coworker depending
> on production.

(Dkt. 11-2, Pg ID 52). Plaintiff wholly fails to explain how his moderate

impairment in concentration, persistence, or pace is not fully accounted for in this

RFC. *See Marini v. Commr. of Soc. Sec.*, 2014 WL 1230034, at *6 (E.D. Mich.

Mar. 25, 2014) (RFC upheld as adequate where plaintiff failed to explain why the

facts of his particular case require a more detailed hypothetical to adequately

account for the moderate limitations in CPP and offered no suggestion with

respect to what those additional limitations should be). Additionally, the ALJ

appropriately relied on plaintiff's ability to watch television, read and drive in

developing the RFC for routine, simple unskilled work. Many courts, including

the Sixth Circuit, have accepted these types of daily activities as valid evidence

that the plaintiff can concentrate, especially if the RFC limits the plaintiff to

simple tasks. *Nace v. Commr. of Soc. Sec.*, 2015 WL 1511055, at *26 (E.D. Mich.

Mar. 25, 2015) (citing *Littlepage v. Chater*, 134 F.3d 371 (6th Cir. 1998) (finding

substantial evidence where "[t]he ALJ also noted that Littlepage had testified that

she watched television and played Nintendo games on a regular basis, which suggested that her ability to concentrate was greater than she claimed")(O'Meara, J.); *Berg v. Comm'r of Soc. Sec.*, 2014 WL 4855337, at *10 (E.D. Mich. Sept. 30, 2014) (adopting Report & Recommendation) (noting that the plaintiff's ability to watch television, combined with other evidence, indicated "sufficient concentration to complete simple one or two-step[ ] tasks")(Cox, J.); *Marini*, 2014 WL 1230034, at *18 (noting that watching television was evidence of concentration); *Lash v. Comm'r of Soc. Sec.*, 2010 WL 931914, at *3 (E.D. Mich. Mar.11, 2010) (adopting Report & Recommendation) (same)(Feikens, J.); *Demars v. Comm'r of Soc. Sec.*, 2009 WL 1803239, at *5 (E.D. Mich. June 24, 2009) (adopting Report & Recommendation) ("The ability to read or watch television stands in sharp contrast to his allegation that he suffered from a complete inability to concentrate.")(Ludington, J.); *Latarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836, at *3 (E.D. Mich. Apr. 20, 2009) (adopting Report & Recommendation) (noting that watching television was evidence of concentration)(Cox, J.). The undersigned finds that the ALJ appropriately and sufficiently accounted for plaintiff's limitations with the above-referenced portion of the RFC. Accordingly, the ALJ's determination that plaintiff retains the RFC to perform simple, unskilled SV1 of SV2 work with the recited restrictions is supported by "substantial

evidence." 42 U.S.C. § 405(g).[4]

### 3.    Credibility

The undersigned did not address plaintiff's claims of error relating to the ALJ's assessment of his credibility in the original report and recommendation. (Dkt. 19). Accordingly, this claim of error was presumably included in the Court's re-referral of the parties' cross-motions for summary judgment. (Dkt. 22). Notwithstanding this inclusion, as part of its order rejecting the original report and recommendation, the Court evaluated plaintiff's credibility argument itself. (Dkt. 22, Pg ID 557-58). Acknowledging that the ALJ erred in his credibility assessment by penalizing plaintiff for his refusal to take his bipolar medications, the Court noted other aspects of the ALJ's credibility determination, which support the ALJ's credibility determination. (*Id*.) The Court identified inconsistencies between plaintiff's testimony and the medical evidence noted by the ALJ, including that blindness in plaintiff's right eye was disabling, yet he could read, watch television and drive, and that plaintiff's alleged back and neck pain was not corroborated by medical examination. (*Id*.). The Court ruled that the valid aspects of the ALJ's credibility determination provide substantial evidence to support that determination, and that the ALJ's error in penalizing plaintiff for

---

[4] Notwithstanding the court's conclusion on the current record, plaintiff's RFC will require reassessment should additional records and/or opinion evidence be introduced on remand.

failure to take his medications was harmless. (*Id.*) This determination is the law of the case and binding on the undersigned. *Waste Mgt. of Ohio, Inc. v. City of Dayton*, 169 Fed. Appx. 976, 985 (6th Cir. 2006) (The law-of-the-case doctrine is rigidly applied to enforce a lower court's obedience to a higher court) (citing *United States v. Dunbar*, 357 F.3d 582, 592 (6th Cir. 2004)).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 18, 2017         s/Stephanie Dawkins Davis
                                      Stephanie Dawkins Davis
                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 18, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov